IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:21-cv-310

| | |
|---|---|
| GINA HUNT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>INDUSTRIAL CONTAINER SERVICES )<br>-NC, LLC & INDUSTRIAL )<br>CONTAINER SERVICES, LLC )<br>)<br>Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## I. INTRODUCTION

1. Gina Hunt ("Plaintiff" or "Hunt") began her time with Industrial Container Services - NC, LLC & Industrial Container Services, LLC (collectively, the "Company" or "ICS") as a Customer Service Representative on or around October 31, 2017.

2. Throughout her time with the Company, Hunt was an excellent employee. She delivered for the Company despite suffering from depression and anxiety throughout her tenure. In the summer of 2018, things got even more difficult for Hunt when James Isles began sexually harassing her. Isles was a driver for the Company who it allowed to harass Hunt through incessant text messages, phone calls, and even visits outside her apartment window. The Company could not have cared less when she reported this harassment.

3. Hunt's depression and anxiety became debilitating in December 2018. Her doctor recommended she take time away from work to heal and the Company agreed to place her

1

out on FMLA leave. Her physician then requested that Hunt be allowed to remain out on leave under the Americans with Disabilities Act through April 12, 2019, before beginning an outpatient treatment plan that would only require Hunt to visit her doctor 20 minutes each day. Hunt never heard from the Company in response to these requests for reasonable accommodation until the end of May—when Defendants abruptly fired her. The Company completely failed to participate in the interactive process required by the Americans with Disabilities Act. Had it done so, Hunt would still have her job today.

4. Hunt now turns to this court to be made whole for her harms and losses. Plaintiff brings this action against the Company for violations of the Americans with Disabilities Act.

## II. PARTIES, JURISDICTION AND VENUE

5. Industrial Container Services - NC, LLC is a Delaware limited liability company, with its principal office located at 375 Northridge Road, Suite 600 Atlanta, Georgia 30350.

6. Industrial Container Services, LLC is a Delaware limited liability company with its principal office located at 375 Northridge Road, Suite 600 Atlanta, Georgia 30350.

7. Venue is proper in the Western District of North Carolina, Charlotte Division, because: Industrial Container Services - NC, LLC & Industrial Container Services, LLC have a substantial presence in Charlotte, North Carolina and conduct a great deal of business in Charlotte. At all relevant times, Plaintiff worked out of the 2810 West Trade Street, Charlotte, NC 28208 location and the facts and circumstances of the case arise in Charlotte. But for Defendants' illegal conduct, Plaintiff would have continued working in Charlotte, North Carolina.

## III. FACTUAL STATEMENT

8. Hunt's psychiatrist referred her for additional treatment measures in December 2018, including the Intensive Outpatient Program ("IOP") therapy program at NHPMC Adult Behavioral Health. Hunt's psychiatrist referred her to the IOP program to treat her severe recurrent major depressive disorder, maladaptive behaviors related to her lack of work/life balance, and generalized anxiety disorder. This IOP included hours of weekly outpatient therapy sessions and multiple one-on-one meetings with her therapist.

9. While out on leave, Isles—and his wife—continued to harass Hunt. On January 10, 2019, Hunt reported Isles to human resources for sexual harassment. Hunt provided screen shots of text messages between her and Isles to human resources manager Terri Neber. Neber did nothing in response.

10. The Company placed Hunt out on 12 weeks of Family and Medical Leave Act leave, from December 3, 2018, through February 25, 2019. On February 25, 2019, Hunt's doctor asked the Company to extend her leave through March 15, 2019, as an accommodation under the Americans with Disabilities Act.

11. The Company did not answer at all, in what would soon become a disturbing pattern of failing to engage in the interactive process that would ultimately lead to the end of Hunt's career with the Company. On March 12, 2019, Hunt's physician developed a treatment plan that would lead to Hunt being able to return to work on April 12, 2019. She wrote another note on March 12 asking that Hunt's leave be extended this one last time through the date certain of April 12, 2019. Hunt hired undersigned counsel in light of the sexual harassment she was experiencing and to help her navigate the disability accommodation process.

12. On March 14, 2019, counsel emailed the Company's human resources manager a copy of Hunt's March 12 medical note and formally requested four weeks of leave as an accommodation under the Americans with Disabilities Act. Counsel also stated that Hunt wanted to invoke her benefits under the Company's short-term disability plan so that this time out would be partially compensated. Counsel's letter requested that the Company contact counsel by March 22 through either human resources or appropriate counsel.

13. Again, the Company was silent. On March 22, counsel sent Hunt's short-term disability paperwork to the Company. Counsel requested that the Company reach out if it had any questions.

14. Again, the Company was silent. By April 12, Hunt was ready to return to work. Hunt's physician's treatment plan then only involved Hunt undergoing 36 sessions of Transcranial Magnetic Stimulation. This procedure would only require a 20-minute visit to her doctor each day from April 10 through June 7. Hunt was no longer requesting any continuous leave from work at all. She was ready to return to the job—and her paycheck. Instead, she now only needed minor schedule adjustments or brief periods of leave each day in order to continue treating her depression and anxiety while also performing the essential functions of her job.

15. Hunt's counsel wrote again to the Company's human resource manager on April 13 enclosing a doctor's note detailing this plan:

> We have not heard from anyone with Industrial Container Services since our March 22 email and letter. Please let me know when you, or counsel for the company, would be available to discuss Ms. Hunt's employment situation and need for disability accommodation. Please find a note from her physician attached.

16. Again, the Company was silent. Neither Hunt nor her counsel heard anything from the Company until May 29. On that day, the Company's human resources manager suddenly fired Hunt because she had "exhausted" her "ADA leave" as of May 24, 2019. Ms. Neber informed Ms. Hunt that she had been on "ADA leave" from February 24, 2019, through May 24, 2019, and her time was now up. Her health insurance would lapse two days later on the 31st and she would never work for the Company again.

## IV. LEGAL CLAIMS

### Count I

*(Violation of the Americans with Disabilities Act)*

17. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

18. Plaintiff was disabled in that she had mental impairments that substantially limited one or more major life activities and/or bodily functions, including but not limited to: depression and anxiety disorders. Plaintiff's condition limited the following major life activities and/or bodily functions: thinking, sleeping, working, caring for herself, and neurological functions.

19. Plaintiff suffered an adverse employment action when Defendants terminated her employment on the basis of her disabilities and/or in retaliation for receiving or requesting a reasonable accommodation (medical leave and/or schedule adjustments).

20. The Company failed to engage in the interactive process required by the Americans with Disabilities Act. Hunt did what she was required to do by alerting the Company to her

disabilities and to her need for accommodation. The Company was silent in response. On April 13, Hunt's counsel requested a conference with the Company's human resources representative or attorney in order to discuss "Ms. Hunt's employment situation and need for disability accommodation." At the same time, counsel delivered Ms. Hunt's physician request for accommodation. Instead of another period of continuous leave, Ms. Hunt's physician was just asking that she be allowed to visit her doctor for 20 minutes per day. This could be accomplished by either minor schedule adjustments or brief period of leave each day to allow Ms. Hunt to get back and forth from the doctor to work. But the Company refused to answer any of these communications.

21. Instead, the Company would later claim that it opted to keep her out on a continuous leave of absence through May 24 that she did not even request. Worse yet, the Company fired her for "exhausting" this leave that it placed her on unilaterally and silently.

22. Had the Company engaged in the required interactive process, Hunt and the Company would have arrived at a reasonable accommodation that would have allowed Hunt to treat her depression and anxiety while also performing the essential functions of her job. Hunt could have attended these medical appointments at times that only briefly interrupted her workday by either scheduling them first thing in the morning, over lunch, or at the end of each day. Likewise, Hunt would have been willing to adjust the start or end times of her workday so as not to miss any work time, if necessary. Such a minimal reasonable accommodation would not have imposed any undue burden on the Company.

23. At the time the Company opted to fire Ms. Hunt, she only had one week of appointments left to attend. According to the Company's May 29 letter, it was able to provide

6

her continuous leave from work without imposing any undue burden from February 24 through May 24. A 20-minute per day medical appointment from May 24 through June 7 would also not have imposed any undue burden.

24. The Company is also violating the Americans with Disabilities Act by apparently maintaining a maximum leave policy under the Americans with Disabilities Act. Employers are required to evaluate employees' disability needs on an individual basis. Placing a cap of three months on the amount of time they are willing to provide what they call "ADA leave" is unlawful. The law instead requires employers to participate in the interactive process to evaluate what an individual employee needs to accommodate their disability and what can be accomplished without imposing undue burdens on the business. At the time the Company decided to fire Hunt, she only needed seven more 20-minute visits to her doctor. Two hours and twenty minutes of time would not have imposed an undue burden.

25. As an actual, proximate, and foreseeable result of Defendants' actions, Plaintiff has suffered lost back and front pay, lost benefits, emotional distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and her peace of mind has been disturbed.

26. Defendants' actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendants' officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages.

## Count II

### *(Wrongful Discharge in Violation of North Carolina Public Policy)*

27. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

28. Plaintiff was an at-will employee of Defendants.

29. Defendants employed at least fifteen (15) employees at all relevant times.

30. The public policy of North Carolina, codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2(a) seeks to protect and safeguard the opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of disability ("handicap"). Defendant violated the public policy of North Carolina by terminating Plaintiff on the basis of her disability (or "handicap")

31. North Carolina public policy also requires that "[o]nce a qualified person with a disability has requested an accommodation, or if a potential accommodation is obvious in the circumstances, an employer . . . shall investigate whether there are reasonable accommodations that can be made and make reasonable accommodations as defined in General Statute 168A-3(10)." N.C. GEN. STAT. § 168A-4.

32. Plaintiff qualified as an individual with a disability in that she was actually disabled/ handicapped. Plaintiff was handicapped in that she had mental impairments that substantially limited one or more major life activities and/or bodily functions, including but not limited to: depression and anxiety disorders. Plaintiff's condition limited the following major life activities and/or bodily functions: thinking, sleeping, working, caring for herself, and neurological functions. Hunt suffered from severe recurrent major depressive disorder,

generalized anxiety disorder, and severe panic attacks, among other psychiatric conditions.

33. Plaintiff suffered an adverse employment action when Defendants terminated her. Defendants fired Plaintiff on the basis of her handicaps.

34. The Company failed to engage in the interactive process required by the North Carolina Persons with Disabilities Protection Act. Hunt did what she was required to do by alerting the Company to her disabilities and to her need for accommodation. The Company was silent in response. On April 13, Hunt's counsel requested a conference with the Company's human resources representative or attorney in order to discuss "Ms. Hunt's employment situation and need for disability accommodation." At the same time, counsel delivered Ms. Hunt's physician request for accommodation. Instead of another period of continuous leave, Ms. Hunt's physician was just asking that she be allowed to visit her doctor for 20 minutes per day. This could be accomplished by either minor schedule adjustments or brief period of leave each day to allow Ms. Hunt to get and forth from the doctor to work. But the Company purposefully refused to answer any of these communications.

35. Instead, the Company would later claim that it opted to keep her out on a continuous leave of absence through May 24 that Hunt did not even request. Worse yet, the Company fired her for "exhausting" this leave that it placed her on unilaterally and silently.

36. Had the Company engaged in the required interactive process, Hunt and the Company would have arrived at a reasonable accommodation that would have allowed Hunt to treat her depression and anxiety while also performing the essential functions of her job. Hunt could have attended these medical appointments at times that only briefly interrupted her workday by either scheduling them first thing in the morning, over lunch, or at the end of each day.

Such a minimal reasonable accommodation would not have imposed any undue burden on the Company.

37. At the time the Company opted to fire Ms. Hunt, she only had one week of appointments left to attend. According to the Company, it was able to provide her continuous leave from work without imposing any undue burden from February 24 through May 24. A 20-minute per day medical appointment from May 24 through June 7 would also not have imposed any undue burden.

38. As an actual, proximate, and foreseeable result of Defendants' actions, Plaintiff has suffered lost back and front pay, lost benefits, severe emotional distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and her peace of mind has been disturbed.

39. Defendants' actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendants' officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages.

## JURY TRIAL DEMANDED

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment against Defendant and order Defendant to pay Plaintiff damages for all harms and losses;

2. Award Plaintiff punitive damages;

3. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with

this action.

4. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

5. Grant Plaintiff a trial of this matter by a jury.


This the 29th day of June, 2021.

*/s/ Kevin P. Murphy*
Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
1712 Euclid Avenue
Charlotte, North Carolina 28203
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com

*Attorneys for Plaintiff*
